IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LINDA J. SCHAEFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:04cv1078-C |
| | ) | (WO) |
| JO ANNE B. BARNHART | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. Introduction**

The plaintiff, Linda J. Schaefer ("Schaefer"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Schaefer then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). The parties

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

have consented to entry of final judgment by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Discussion

### A. Introduction

Schaefer was 48 years old at the time of the hearing before the ALJ. (R. 242.) She has a ninth grade education and a high school equivalency diploma. (R. 226, 243.) Schaefer's prior work experience includes work as deli clerk, deli chef, toll collector, cocktail waitress, and stock clerk. (R. 20, 248-49.)

Schaefer alleges that she became disabled due to lower back pain. (R. 252.) Following the hearing, the ALJ concluded that Schaefer has severe impairments of lumbar degenerative disk disease and a history of sacral stress fracture. (R. 19.) He also determined that she has non-severe impairments of hepatitis-C and a history of cervical cancer. (*Id.*) The ALJ found that Schaefer is able to perform her past relevant work as a deli clerk, cocktail waitress, or toll collector. (R. 20, 23.) Accordingly, the ALJ determined that Schaefer was not disabled. (R. 23.)

### B. Plaintiff's Claims

As stated by Schaefer, she presents the following issues for the Court's review:

1. The ALJ improperly discredited plaintiff's allegations of pain;

2. The ALJ improperly evaluated plaintiff's credibility; and

3. The ALJ failed properly to question the vocational expert.

### IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, *e.g.*, the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).

### A. The Credibility Analysis

Schaefer contends that the ALJ failed to properly evaluate her subjective complaints of pain. The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553.

The Commissioner must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Commissioner has, as a matter of law, accepted the testimony as true. This standard requires that the articulated reasons be supported by substantial reasons. If there is no such support, the testimony must be accepted as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

The medical evidence demonstrates that Schaefer suffers from the underlying medical conditions of lumbar degenerative disk disease and history of a sacral stress fracture. On December 13, 2001, Dr. Charles Ted Paulk diagnosed Schaefer with suffering from "acute

[lumbar spine] strain with right sciatica." (R. 114.) On January 24, 2002, Schaefer underwent magnetic resonance imaging ("MRI") of her spinal canal. (R. 171.) Dr. John Brannan, a radiologist, determined that Schaefer suffers from "mild degenerative disc disease at T11-12 without posterior spondylosis or annular bulging." (*Id.*) On April 30, 2002, Dr. Brannan conducted a computerized axial tomography ("CT scan") and found that Schaefer suffered from "mottled trabecular pattern throughout the right wing of the sacrum with cortical irregularities." (R. 172.) He also noted that the "findings may be secondary to posttraumatic changes with healing fractures." (*Id.*) On August 23, 2002, Schaefer underwent a complete body bone scan. (R. 176.) On September 3, 2002, Dr. John D. Dorchak reviewed the bone scan report and determined that Schaefer suffers from "healed sacral insufficiency fractures with residual lower back pain." (R. 151.) Therefore, Schaefer meets the first prong of the pain standard.

However, in this case, the ALJ found that Schaefer's testimony of disabling pain was not credible because the record did not contain objective signs and findings that could reasonably be expected to produce the degree of intensity of the pain alleged. For example, on January 8, 2002, Dr. Robert Moore, an orthopaedic specialist, determined that x-rays of Schaefer's back revealed no abnormalities. (R. 120.) On January 24, 2002, Dr. Moore again determined that Schaefer's x-rays did not indicate a disc problem and that an MRI did not reveal any significant pressure on the cord of the nerve roots  (R. 119.) He advised Schaefer that she should return to work, but that she should avoid stooping, bending, and lifting more than 25 pounds. (*Id.*) On April 8, 2002, Dr. Moore determined that, even though a CT scan

indicated that Schaefer suffered from probable stress fractures, this condition should not prevent her from returning to work with some limitations. (R. 117.) A few weeks later, Schaefer presented to Dr. Moore's office with complaints that she had re-injured her back by falling off a toilet seat. (R. 117.) Dr. Moore found that x-rays of Schaefer's back did not reveal any abnormalities and advised that she should return to work in one week. (*Id.*) On August 2, 2002, Dr. Dorchak concluded that x-rays of Schaefer's lumbar spine were normal and advised her that she should avoid lifting more than twenty pounds and repetitive twisting and bending. (R. 152.) On August 23, 2002, Dr. Julia A. Alexander, a radiologist, determined that a whole body bone scan revealed no indication of metastatic disease. (R. 176.) On August 27, 2002, Dr. Edmund G. LaCour, a radiologist, conducted a bone density scan and determined that Schaefer suffers from mild osteopenia at the lumbar and moderate osteopenia at the hip. (R. 168.) On September 3, 2002, Dr. Dorchak determined that a bone density scan revealed mild osteopenia and healed sacral insufficiency fractures. (R. 180.) He concluded that Schaefer was able to work, but that she should avoid lifting objects greater than thirty pounds. (*Id*.) On March 26, 2003, Dr. Dorchak determined that x-rays of Schaefer's lumbar spine revealed mild spondylosis and no significant abnormalities. (R. 180.)

The ALJ considered that Schaefer's underlying conditions are capable of giving rise to some pain and other limitations; however, he concluded that Schaefer's underlying impairments are not so severe as to give rise to the disabling pain as alleged. The ALJ discredited her testimony based upon her inconsistent statements regarding her daily activities,

7

her complaints of pain to her physicians, and the specific injuries she suffered.[4]

Schaefer complains that the ALJ did not properly evaluate all of her testimony.[5] The ALJ relied on Schaefer's daily activities of cooking, shopping, cleaning, caring for her pets, and gardening to conclude that her pain was not as severe as alleged. In her physical activities questionnaire, Schaefer stated that she cooks, cleans, makes lunch and breakfast, feeds and bathes her animals, waters, transplants, and fertilizes her plants, and cleans and changes the water in her eighty gallon fish tank.[6] (R. 86.) On February 18, 2004, Schaefer also reported to her treating physician that her hobbies include keeping cats, dogs, and fish. (R. 226.) During the hearing, Schaefer testified that she shops for groceries, loads the dishwasher, packs

---

[4] In addition to challenging the ALJ's findings regarding her daily activities, her complaints of pain to her physicians, and her specific injuries, Schaefer asserts that the ALJ's finding that her testimony regarding her education was inconsistent with the medical evidence is not supported by substantial evidence. During the hearing, Schaefer testified that she completed the ninth grade. (R. 243.) The medical records demonstrate that Schaefer completed the ninth grade and acquired a G.E.D. (R. 226.) Thus, the record before this court indicates that Schaefer's testimony regarding her completion of ninth grade is consistent with other evidence in the record. Nonetheless, the record clearly indicates that, when questioning the vocational expert and when conducting his analysis of her residual functional capacity, the ALJ presumed that Schaefer completed the ninth grade This court therefore concludes that the ALJ's reference to inconsistencies regarding Schaefer's educational level was not material to his final determination. Moreover, the ALJ's findings regarding other inconsistencies between Schaefer's allegations and the medical records are supported by substantial evidence.

[5] In addition, Schaefer asserts that the ALJ erred in determining that the modest assessment of workers compensation settlement was grounds to discredit her testimony. Specifically, she asserts that the ALJ should have considered that her employer was only obligated to compensate her for her work-related injury and was not required to compensate her for the injury she received from falling off a toilet in April 2002 and her pre-existing conditions resulting from chemotherapy treatment. However, the ALJ did not rely solely on the workers compensation settlement assessment when concluding that Schaefer's testimony regarding her pain cannot be considered wholly credible.

[6] In the physical activities questionnaire, Schaefer also indicates that some of her daily activities were limited. For example, Schaefer stated that her husband assists her with carrying heavy items and frequently helps around the house, that she is unable to take out the garbage, that she does not "cook a lot or bake at all," and that she only makes breakfast for her husband on the weekend. (R. 87.)

her husband's lunches, cooks dinner, waters her potted plants, drives to see her mother, feeds her fifteen cats and three dogs, dusts and sweeps, and is able to vacuum one room at a time. (R. 260-263, 265, 267, 272.) The court therefore concludes that the ALJ's determination with respect to Schaefer's daily activities is supported by substantial evidence.

The ALJ also relied on Schaefer's complaints to her physicians to conclude that her pain was not as severe as alleged. The ALJ noted that Schaefer told her doctor that the pain in her lower back was episodic and denied paresthesias, dysethesias, and weakness in her lower extremities. (R. 20.) The record demonstrates that, on August 12, 2002, Schaefer complained to Dr. Dorchak that, after lifting a case of mayonnaise in December 2001, she had "problems with dull aching pain in her lower back which is now episodic in nature" and that "[s]he feels her symptoms are better as long as she is not lifting." (R. 152.) Thus, the ALJ's determination that Schaefer reported episodic pain to her physician is supported by substantial evidence.

In addition, the ALJ concluded that Schaefer's allegations regarding the cause of the specific injury she sustained were inconsistent. The record indicates that Schaefer gave varying reports to her physicians regarding the initial source of her pain. For example, on December 10, 2001, Schaefer presented to Dr. Clifford C. Quintana with complaints of right thigh pain and reported that she began suffering from pain on December 8, 2001, when she twisted her leg while stocking items at work. (R. 115.) However, on December 13, 2001, Schaefer reported to Dr. Charles Paulk that she began suffering from lower back pain after doing a lot of bending, stooping, and lifting at work and that "there was no sudden onset to

9

the pain." (R. 114.) In addition, on December 26, 2001, Schaefer informed Dr. Paulk that she had suffered from hip, leg, and back pain "for about two months since she strained her back at work." (R. 112.) On January 8, 2002, Schaefer reported to Dr. Moore that she began experiencing pain in her lower back and right leg two or three weeks prior to her appointment and that "she doesn't remember any specific injury, but that she does a lot of lifting at work." (R. 120.) On August 12, 2002, Dr. Dorchak noted that Schaefer's pain began while lifting a case of mayonnaise on December 8, 2001. (R. 152.) The court therefore concludes that there is substantial evidence in the record to support the ALJ's determination that Schaefer gave inconsistent reports to her physicians regarding the initial cause of her pain and the specific time her symptoms began.

The ALJ has discretion to discredit a claimant's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt*, 921 F.2d at 1223. A reviewing court will not disturb a clearly articulated credibility finding where there is substantial evidence in the record to support the finding. *See Hale*, 831 F.2d at 1012; *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). The ALJ's reasons for discrediting Schaefer's testimony of disabling pain were both clearly articulated and supported by substantial evidence. After a careful review of the record, the court concludes that the ALJ conducted the proper credibility analysis and properly discounted Schaefer's testimony of pain.[7]

---

[7] To the extent Schaefer claims that the ALJ failed to properly consider her testimony regarding the side effects of her medications, she is entitled to no relief. During the hearing, Schaefer testified that her pain medications cause her to "feel a little lightheaded but other than that ... nothing" and that she does not drive a car while on Vicodin. (R. 253-54.) The ALJ must consider the side effects of Schaefer's medication where

### B.  Questions to the Vocational Expert

Schaefer asserts that the ALJ failed to question the vocational expert regarding her non-exertional limitations, such as her pain or the side effects caused by her pain medication. Schaefer misunderstands the sequential evaluation process. The ALJ truncated the sequential evaluation process at step four by concluding that Schaefer could perform her past relevant work.  If Schaefer can return to her past relevant work, any failure on the part of the ALJ to ask the vocational expert to consider whether Schaefer's pain and the side effects of her medication affected her ability to work is of no consequence.  Vocational factors are not considered at step four of the sequential evaluation process. 20 C.F.R. § 416.960(b). *See also Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990) (vocational expert testimony is not required at step four to evaluate a claimant's ability to perform past relevant work).

### V.  Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled.

---

their existence is supported by substantial evidence. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990).  However, in reviewing the medical records, the court can find only one reference to possible side effects of Schaefer's medications.  On December 10, 2001, Dr. Quintana advised Schaefer that she might suffer from sleepiness and should not operate a car or equipment while taking Skelaxin.  (R. 115.) Interestingly, at the time of the hearing before the ALJ, Schaefer testified that she was taking Vicodin and Lorcet Plus, not Skelaxin.  The ALJ properly considered Schaefer's complaints and then discredited her testimony because the medical records do not support her allegations.  Specifically, the ALJ found that "there is no evidence in the record that the medication side effects can be expected to limit the claimant's effectiveness in the performance of work duties or everyday tasks or that those side effects can be expected to be severe and to limit the claimant's overall efficiency." (R. 21.)  Substantial evidence supports the ALJ's conclusion that Schaefer's medications do not cause side effects which prevent her from working.  This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and are based upon the proper legal standards.  *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

Accordingly, it is ORDERED that the decision of the Commissioner be and is hereby affirmed.

Done this 9th day of May, 2005.

                                        /s/Charles S. Coody
                                  CHARLES S. COODY
                                  CHIEF UNITED STATES MAGISTRATE JUDGE